

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 15 CV 2940

-------------------------------------------------------x
                                :

HEYWARD DOTSON and
REGINALD HOWARD,
                                :

                         Plaintiffs,  :

                                :

             v.                      :

THE CITY OF NEW YORK; JOHN DOE
NYPD PLAINCLOTHES OFFICERS #1 and
#2,
                                :

                     Defendants. :
-------------------------------------------------------x

**COMPLAINT AND
DEMAND FOR JURY TRIAL**



Plaintiffs Heyward Dotson and Reginald Howard, by the undersigned attorneys,

bring this action against the City of New York and John Doe NYPD Plainclothes Officers #1 and

#2, alleging upon information and belief as follows:

## PRELIMINARY STATEMENT

    1.     This action is brought by Plaintiffs Heyward Dotson and Reginald

"Reggie" Howard ("Plaintiffs") pursuant to the Fourth and Fourteenth Amendments of the

United States Constitution, 42 U.S.C. § 1983 and New York City Administrative Code § 14-151.

    2.     Plaintiffs' claims arise from an incident on July 9, 2013, during which

Defendants John Does #1 and #2, two New York City police officers, unlawfully searched and

seized Plaintiffs outside Mr. Dotson's home on the corner of West 142nd Street and Riverside

Drive.  At the time, Plaintiffs were engaged in conversation, during which Mr. Howard retrieved

his recently obtained diploma from his backpack, and displayed it to Mr. Dotson.  Immediately

thereafter, Defendants approached Plaintiffs in a vehicle and, without reasonable suspicion or

probable cause, detained and searched Plaintiffs.  The officers had their hands on their firearms

during much of the incident and used racially offensive language, calling Mr. Dotson a "nigger" and stating to Mr. Howard that it was suspicious for "two black guys" to have engaged in the behavior observed by the officers.

3.  Based on these events, and for the reasons set forth in greater detail below, Plaintiffs seek damages, declaratory and injunctive relief, and such other and further relief as this Court deems equitable and just.

## JURISDICTION

4.  Jurisdiction is conferred upon this Court under 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4), as this is a civil action arising under 42 U.S.C. § 1983 and the United States Constitution.

5.  This Court has jurisdiction over the supplemental claims arising under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a).

## VENUE

6.  Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because all of the events and/or omissions giving rise to Plaintiffs' claims occurred therein.

## PARTIES

7.  Plaintiff HEYWARD DOTSON is a 66-year-old black man and at all times relevant herein was a resident of the State of New York, County of New York.

8.  Plaintiff REGINALD HOWARD is a 21-year-old black man and at all times relevant herein was a resident of the State of New York, County of New York.

9.  The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York.  At all times relevant hereto, Defendant City, acting through the New York Police Department, was responsible for the policy, practice,

supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

10.     JOHN DOE #1 is believed to be a male police officer and employee of the NYPD, the identity of whom is presently unknown to Plaintiffs.  On July 9, 2013, he approached Plaintiffs at the corner of West 142nd Street and Riverside Drive and engaged in the acts described herein.  He is sued individually and in his official capacity.

11.     JOHN DOE #2 is believed to be a male police officer and employee of the NYPD, the identity of whom is presently unknown to Plaintiffs.  On July 9, 2013, he approached Plaintiffs at the corner of West 142nd Street and Riverside Drive and engaged in the acts described herein.  He is sued individually and in his official capacity.

12.     At all times here mentioned, Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTS

13.     On July 9, 2013, between approximately 12:00 p.m. and 1:00 p.m., Mr. Howard and Mr. Dotson were engaged in a conversation in front of Mr. Dotson's home at the corner of West 142nd Street and Riverside Drive.  During that conversation, Mr. Howard, who had recently graduated from Monroe College, reached into his backpack and presented a copy of his diploma to Mr. Dotson.  After displaying his diploma to Mr. Dotson, Mr. Howard put the diploma back in his backpack.

14.     Shortly after Mr. Howard put his diploma away, John Does #1 and #2 approached Plaintiffs in a vehicle and confronted Plaintiffs.

15.     John Doe #1 approached Mr. Dotson and separated him from Mr. Howard. During the incident, John Doe #1 shouted at Mr. Dotson, ordering him, among other things, to produce identification and to position himself against the wall.  During the incident John Doe #1 also ordered Mr. Dotson to show him what he was carrying.  Mr. Dotson complied with this demand and showed John Doe #1 a grocery bag containing a number of sodas.  John Doe #1 also referred to Mr. Dotson as a "nigger" during the course of the encounter.

16.     At all relevant times, John Doe #1 remained in close physical proximity to Mr. Dotson, with his hand on his firearm during most of the encounter.  At no point did Mr. Dotson feel free to leave or to refuse to comply with any other demands made by the officer.

17.     At the same time that John Doe #1 was interacting with Mr. Dotson, John Doe #2 confronted Mr. Howard, who had been separated from Mr. Dotson.

18.     During his encounter with John Doe #2, Mr. Howard attempted to explain to the officer that he was merely showing Mr. Dotson his recent diploma.  During the encounter, John Doe #2 was in extremely close physical proximity to Mr. Howard and made a number of threatening statements, often with his hand on his firearm.  Among other things, John Doe #2 threatened to "escalate" the encounter and John Doe #2 also repeatedly asked Mr. Howard if he was "disrespecting" him and threatened to "disrespect" Mr. Howard.

19.     John Doe #2 also expressly stated that Plaintiffs appeared "suspicious" referring to Plaintiffs as "two black guys."  John Doe #2 made statements to the effect that it was "suspicious" for Mr. Howard to have showed Mr. Dotson an item produced from his backpack.

20.     During their encounter, and without Mr. Howard's consent, John Doe #2 seized and opened Mr. Howard's backpack and searched its contents.

21.     At all relevant times, John Doe #2 was in extremely close physical proximity to Mr. Howard (often within inches), and at no time did Mr. Howard feel free to leave or to refuse to comply with any other demands made by the officer.

22.     After John Doe #2 confirmed that Mr. Howard was carrying a diploma in his backpack, and that there was no evidence that either Plaintiff was engaged in any criminal or other improper conduct, John Does #1 and #2 promptly left the scene.

23.     Neither officer identified themselves to either Plaintiff.  At no time did either officer attempt to intervene in the unconstitutional and unlawful conduct of the other.

24.     At 1:00 p.m. the following day, July 10, 2013, Mr. Dotson and Mr. Howard each filed reports with Sergeant Rodriguez at the 30th precinct.  The reports described what occurred on July 9, 2013, but Plaintiffs were unable to name the officers because the officers did not identify themselves.  Plaintiffs both gave descriptions of the officers, in addition to a partial license plate number for the car the officers were driving.

25.     The New York City Police Department Patrol Guide ("Patrol Guide") requires, in cases where officers are unidentified, for an "Investigating Supervisor" to follow up with a complaint to ascertain the identity of the officers involved.  *See* New York City Police Department Patrol Guide at 207-31(7)(a).

26.     If the "Investigating Supervisor" is unable to ascertain the identities, the Patrol Guide requires the commanding officer or duty captain to be notified.  *Id.*

27.     The Civilian Complaint Review Board ("CCRB") initiated an investigation based on the complaints Mr. Dotson and Mr. Howard filed.  During the

investigation, Mr. Dotson and Mr. Howard both reviewed photographs of police officers that were possibly involved.

28.     It is unclear whether John Does #1 and #2 filed a UF-250 form for this incident as instructed by the Patrol Guide. *Id.* at 212.

29.     The CCRB was unable to identify the officers involved.

### FIRST CAUSE OF ACTION
### VIOLATION OF PLAINTIFFS' FOURTH AMENDMENT
### RIGHT TO BE FREE OF UNREASONABLE SEARCHES
### AND SEIZURES

30.     Plaintiffs incorporate by reference paragraphs 1-30 as if set forth herein.

31.     The conduct described herein constituted an unreasonable search and seizure under the Fourth Amendment to the United States Constitution.

32.     Without any basis to form a reasonable articulable suspicion that Plaintiffs had engaged or were about to engage in criminal conduct, John Does #1 and #2 stopped Plaintiffs in violation of the Fourth Amendment to the United States Constitution. This violation of Plaintiffs' Fourth Amendment rights was a direct and proximate result of the acts and omissions of John Does #1 and #2. As a result of the foregoing, Plaintiffs were deprived of their liberty, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

### SECOND CAUSE OF ACTION
### VIOLATION OF PLAINTIFFS' FOURTEENTH AMENDMENT
### RIGHT TO EQUAL PROTECTION OF THE LAW

33.     Plaintiffs incorporate by reference paragraphs 1-30 as if set forth herein.

34.     The conduct described herein constituted a violation of Plaintiff's Fourteenth Amendment Right to Equal Protection of the Law.

35.     John Does #1 and #2 stopped Plaintiffs because they are black and intentionally discriminated against Plaintiffs based upon their race and with no legitimate basis for having done so.

36.     By the actions described above, John Does #1 and #2 intentionally deprived Plaintiffs of their constitutional rights to Equal Protection of the laws and are liable to Plaintiffs under the Fourteenth Amendment and 42 U.S.C. § 1983.

37.     As a result of the foregoing, Plaintiffs were deprived of their liberty, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRD CAUSE OF ACTION
## BIAS-BASED PROFILING

38.     Plaintiffs incorporate by reference paragraphs 1-30 as if set forth herein.

39.     John Does #1 and #2 stopped Plaintiffs because they are black, and with no legitimate basis for having done so.

40.     There was no factor unrelated to unlawful discrimination that justified John Does' #1 and #2 unlawful search and seizure of Plaintiffs.

41.     By the actions described above, John Does #1 and #2 intentionally engaged in bias-based profiling in violation of New York City Administrative Code § 14-151.

## FOURTH CAUSE OF ACTION
## MUNICIPAL AND SUPERVISORY LIABILITY

42.     The above paragraphs are here incorporated by reference.

43.     The acts complained of were carried out by the aforementioned defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and NYPD, all under the supervision of ranking officers of the NYPD.

44.     Customs, practices, procedures and rules of the City and NYPD that resulted in the constitutional violations of plaintiffs include, but are not limited to: 1) engaging in bias based profiling; 2) failing to complete proper reports and/or discouraging police officers from assisting in CCRB investigations; and 3) lying during investigations.

45.     The existence of aforesaid unconstitutional customs and policies are evidenced from repeated occurrences of similar wrongful conduct, as documented by the following civil rights action(s), city agency reports and support for pending New York City Council Introduction 182.

46.     Just over a month after the events that give rise to this complaint, Judge Shira A. Scheindlin found the City of New York and the New York Police Department deliberately indifferent to overwhelming institutional evidence of widespread indirect racial profiling in *Floyd, et al., v. City of New York, et al.*, 959 F.Supp.2d 540, 590 (S.D.N.Y. 2013).  In her 198-page decision, Judge Scheindlin outlined how blacks and Hispanics are targeted for stops by the NYPD based on a lesser degree of objectively founded suspicion than whites.  This disparity is the result of the NYPD "directing its commanders and officers to focus their stop activity on 'the right people' – the demographic groups that appear most often in a precinct's crime complaints." *Id.*  After dismissing the NYPD's attempts to justify this policy, Judge Scheindlin observed that "there is no explanation for the NYPD's disproportionate stopping of blacks and Hispanics other than the NYPD's stop practices having become infected, somewhere along the chain of command, by racial bias." *Id.* at 588.

47.     Again, just over a month after the incident complained of in this petition, the New York City Council, in response to the "NYPD's growing reliance on stop-and-frisk tactics and the impact of this practice on communities of color," passed a bill that created a

private right of action for claims of bias-based profiling based on discriminatory intent or disparate impact. *See* N.Y. City Council Introductory No. 1080 of 2013.

48.     There is a long documented history of officers obstructing investigations of police misconduct by not identifying themselves or other officers involved in alleged misconduct. This has led New York City Council members to support Introduction 182, a bill that would require officers to identify themselves to civilians during an encounter so that they may be later held accountable for misconduct. From the website supporting the campaign, the need for the bill is explained:

> All too often, New Yorkers have no idea why they're being questioned, stopped or searched by a police officer. NYPD policy already requires that officers provide their name, rank, shield number and command when asked. However, in many instances, officers do not identify themselves to members of the public and many individuals report fear of asking for the identity of an officer for fear of retaliation. Research suggests that in the absence of anonymity, officers are less likely to engage in abusive or discourteous behavior. New Yorkers should have the right to know the identity of police officers that interact with them.[1]

49.     Indeed, 13.4% of Civilian Complaint Review Board complaints in 2014 were closed because of "unidentified officers," an increase from 9.8% in 2013.[2] This is ten years after the CCRB recommended more affirmative language in the Patrol Guide about police officers' affirmative duties to identify themselves by name and badge upon the request of a civilian.[3]

50.     Furthermore, the City has been aware for too long about how tacit policies of retaliation intimidate officers from identifying themselves and other officers facing

---

[1] Communities United for Police Reform, Right to Know Act, *available at* http://changethenypd.org/right-know-act

[2] CCRB Biannual Report, January-June 2014, *available at* http://www.nyc.gov/html/ccrb/downloads/pdf/CCRBsemi_2014.pdf

[3] CCRB Report, "Refusal to Provide Name/Shield Number: An Analysis of an Allegation," 2003, *available at* http://www.nyc.gov/html/ccrb/downloads/pdf/nmshldanalysis4pg.pdf

misconduct allegations.  Lawsuits filed by two former officers and one current officer alleged

retaliation by other officers within the NYPD for reporting misconduct.[4]  Adrian Schoolcraft

alleges in a 2010 lawsuit that, after exposing the 81st precinct's policies of illegal quotas for

summonses and arrests, he was arrested and committed to a psychiatric facility in retaliation for

exposing these practices and customs.  *Schoolcraft v. City of New York, et al.*, 10-CV-6005

(RWS), 2011 WL 1758635 (S.D.N.Y. May 6, 2011).  Officers have repeatedly alleged retaliation

by other officers after testifying or reporting corruption.  *See, e.g., Nonnenmann v City of New

York, et al.,* 174 F.Supp.2d 121 (S.D.N.Y. 2001) (former NYPD lieutenant alleging retaliatory

demotion and early retirement after reporting fellow officer to IAB and CCRB for suspicion-less

stop-and-frisks); *Barry v. City of New York, et al.,* 01-CV-10627, 2004 WL 758299, at *1

(S.D.N.Y. Apr. 7, 2004) (NYPD alleged retaliatory demotion and disciplinary charges in

response to sergeant's allegations of corruption within her unit and alleged the NYPD had an

"unwritten but persuasive custom of punishing officers who speak out about police misconduct

and encouraging, if not facilitating, silence among officers").

        51.    In addition to retaliation and active obstruction of investigations, there is

also a long documented history of fabrications by police officers to cover up police misconduct

and secure arrests motivated by promises of promotion within the NYPD.  "Informal inquiry by

the court and among the judges of this court, as well as knowledge of cases in other federal and

state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting

police officers of the New York City Police Department."  *Colon v. City of New York, et al.,* 09-

CV-0008 (JBW) (E.D.N.Y.).  As an example of this, in June 2011, NYPD Sergeant William

---

[4] Goldstein, Joseph, "Officers, Exhorted to Report Corruption, Still Fear Retaliation," *The New York Times*, June 25, 2012, *available at* http://www.nytimes.com/2012/06/25/nyregion/new-york-police-officers-face-retaliation-for-reporting-corruption.html?pagewanted=all&_r=0

Eiserman plead guilty to perjury and falsifying police records, "admit[ing] to faking a marijuana case against one man and cocaine-related charges against another – and training Velasquez [officers] to falsify paperwork to sidestep legal safeguards."[5]

52.     These policies of bias-based discriminatory profiling, obstruction of investigations and fabrication to cover up for misconduct, caused the officers in the present case to violate Plaintiffs' civil rights, without fear of reprisal.

53.     Plaintiffs have been damaged as a result of the deliberate indifference of the Defendant City.

### JURY DEMAND

54.     Plaintiffs demand a trial by jury of all issues so triable.

**WHEREFORE,** Plaintiffs respectfully request that this Court:

55.     Award Plaintiffs damages in an amount to be determined at trial;

56.     Declare that John Does #1 and #2 engaged in and subjected Plaintiffs to bias-based profiling;

57.     Enjoin John Does #1 and #2 from engaging in further bias-based profiling;

58.     Award Plaintiffs reasonable attorneys' fees, costs, and expenses of litigation, including any authorized under 42 U.S.C. § 1988 and New York City Administrative Code § 14-151; and

59.     Grant such other further and different relief as the Court deems just and proper.

---

[5] Grace, Melissa, "NYPD Sgt. William Eiserman Pleads Guilty to Lying Under Oath in Plea Deal," *The Daily News*, June 27, 2011, *available at* http://www.nydailynews.com/news/crime/nypd-sgt-william-eiseman-pleads-guilty-lying-oath-plea-deal-article-1.129288.

Dated: New York, New York
       March 25, 2015

Steven Wasserman
The Legal Aid Society
199 Water Street, 6th Floor
New York, New York 10038
Telephone:  (212) 577-3919
Facsimile:  (646) 449-6989

Shearman & Sterling LLP
Alan S. Goudiss
Randall L. Martin
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179